IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK TINNENY,<br>    Plaintiff,<br><br>  v.<br><br>MIKE WEILBACHER,<br>STEVE GOIN,<br>BINNY MEIGS,<br>TOM LANDSMANN,<br>ANNA MUESER,<br>ECHELON PROTECTION AND<br>SURVEILLANCE,<br>ECHELON EMPLOYEE JOHN DOE #1,<br>ECHELON EMPLOYEE JOHN DOE #2,<br>ECHELON EMPLOYEE JOHN DOE #3,<br>SCHUYLKILL CENTER FOR<br>ENVIRONMENTAL EDUCATION, and<br>BOARD OF TRUSTEES SCHUYLKILL<br>CENTER FOR ENVIRONMENTAL<br>EDUCATION,<br>    Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  15-753 |

**DuBois, J.**                                        January 19, 2017

# M E M O R A N D U M

    This action is brought by *pro se* plaintiff Mark Tinneny against the Schuylkill Center for Environmental Education ("SCEE"), Echelon Protection and Surveillance, LLC ("Echelon"), and other associated defendants. Plaintiff filed two suits—Civil Action Nos. 15-753 and 15-4305—consolidated in this action before the Court. The Complaints include multiple claims under federal law: (1) violation of the Fair Housing Act, (2) hostile work environment under Title VII, (3) violation of the Equal Pay Act, (4) retaliation under Title VII, and (5) violation of the First Amendment to the United States Constitution, and several state-law claims: defamation, wrongful discharge, assault, battery, and invasion of privacy.

    Presently before the Court are two Motions to Dismiss filed by defendants. For the reasons that follow, the Court grants in part and denies in part SCEE defendants' Motion and dismisses

1

plaintiff's hostile work environment, Equal Pay Act violation, First Amendment violation, defamation, and wrongful discharge claims with prejudice. The Court grants Echelon defendants' Motion in part and dismisses plaintiff's invasion of privacy claim against Echelon defendant John Doe #1 with prejudice, and denies the Motion in all other respects.

## I. BACKGROUND

### A. PARTIES

Plaintiff's Complaints assert claims against numerous defendants. Plaintiff has named SCEE, an environmental non-profit organization, and its Board of Trustees as defendants. Also named as defendants are SCEE's director, Mike Weilbacher; two members of SCEE's Board of Trustees, Tom Landsmann and Binny Meigs; and two SCEE employees, Steve Goin and Anna Mueser. Additionally, plaintiff has named as defendants Echelon Protection and Surveillance, LLC, a private security company hired by SCEE, and three John Doe defendants employed by Echelon.

### B. FACTUAL BACKGROUND

The facts as alleged in plaintiff's Complaints are summarized as follows. Beginning on April 24, 2013, plaintiff was employed by SCEE as a part-time groundskeeper. Compl. in Civil Action No. 15-753 ("Compl. I") ¶ 8; Compl. in Civil Action No. 15-4305 ("Compl. II") ¶ 16. As part of his employment, plaintiff entered into a one-year residential lease with SCEE for the historic "Weil House," located on SCEE's property. Compl. II ¶ 17.

Plaintiff alleges that SCEE discriminated against him on the basis of his gender. Specifically, he claims that certain female "30-hour-a-week" employees held the title of "manager," and were awarded benefits like paid leave and medical benefits. Plaintiff, also a 30-hour-a-week employee, was denied those benefits. Compl. II ¶¶ 24–46. Plaintiff was also subjected to a culture of sexual harassment. He avers that on January 24, 2014, defendant Tom Landsmann, a member of the SCEE Board, called plaintiff a "fucking pussy," insulted plaintiff's intelligence, and then used

the same expletives a second and third time. Compl. II ¶¶ 49–59. As punishment for this incident the Board forbade Landsmann from interacting with employees, Compl. II ¶ 66, though that penalty was not enforced on at least one occasion. Compl. II ¶¶ 68–72.

On April 17, 2014, plaintiff met with his supervisor, Gregory Sean Duffy. Compl II. ¶ 73. Plaintiff told Duffy that he planned to file a charge of discrimination with the EEOC. *Id.* Duffy responded, "If you do, that will be a problem! I will guarantee that everyone that works here will hate you." Compl. II ¶ 75. Shortly after that conversation, plaintiff filed his first charge of discrimination with the EEOC (EEOC Charge No. 530-2014-03124) on April 24, 2014. Compl. I ¶ 12; *id.* Ex. A. Plaintiff was subsequently isolated from all SCEE social events, Compl. II ¶ 82, a rumor began that he was "dangerous," Compl. II ¶¶ 83, 84, plaintiff was banned from communicating with the president of the SCEE Board (identified in the Complaint as Wagner) and Mike Weilbacher (the SCEE director), Compl. II ¶ 87, and he was demoted to a "20-hour-a-week employee." Compl. II ¶¶ 90–91.

On June 26, 2014, plaintiff claims that he witnessed Duffy purchase drugs on the grounds of a preschool at SCEE. Compl. II ¶ 96. Plaintiff notified "two employees of the drug deal, one of whom, Rick Schubert, was a senior manager," Compl. II ¶ 98, and sent Weilbacher a copy of a "tipline report" he had filed with the Philadelphia Police Department, Compl. ¶ 102. Later that afternoon, Duffy informed plaintiff that SCEE had decided not to renew plaintiff's lease "for financial reasons." Compl. II ¶ 99.

Plaintiff subsequently began picketing on the Weil House property. Compl. II ¶ 117. On June 26, 2014, SCEE called the police about plaintiff's protest activities. *Id.* Plaintiff overheard defendant Steve Goin tell the police that plaintiff was "mentally ill" and "may be schizophrenic." Compl. II ¶ 118. That same day, Weilbacher sent an email to "SCEE parents" stating that plaintiff was being "closely monitored" and that "[a]s an additional precaution, a boundary has been

3

established around the house he has inhabited; no visitors, children, or groups are able to access parts of our property near that boundary." Compl. II ¶ 123. Defendant Anna Lehr Mueser, wrote a letter issued that same day repeating Weilbacher's statement, and claiming that "[w]e are in the process of evicting the former employee," who "refuses to leave." Compl. II ¶ 125. Plaintiff was officially terminated on July 7, 2014. Compl. II ¶ 104. Plaintiff filed a second charge of discrimination with the EEOC (EEOC Charge No. 530-2014-03124) on August 19, 2014, alleging retaliation. Compl. I Ex. B.

On July 10, 2015, SCEE obtained a Permanent Injunction Order against Tinneny from the Court of Common Pleas, Philadelphia County. Doc. No. 1, at 100. That injunction, *inter alia*, forbids Tinneny from protesting at the Weil House, and trespassing on SCEE property (excluding the Weil House and vehicular ingress and egress). SCEE hired Echelon Protection and Surveillance, LLC ("Echelon") "to protect [SCEE's] interests under the injunction." Echelon Br. at 7.

While providing those security services, Echelon employees (John Doe defendants # 1–3) attempted to run plaintiff over with their vehicles, Compl. II ¶¶ 128, 141, and pointed a loaded firearm in his direction. Compl. II ¶¶ 135–137. John Doe # 3's vehicle "grazed Plaintiff's leg, causing him to fall back." Compl. II ¶ 142. Finally, John Doe # 1 "hid[ ] behind trees and bushes, taking pictures of Plaintiff." Compl. II ¶ 129.

### C. PROCEDURAL BACKGROUND

Tinneny is the plaintiff in two suits, both of which are presently before the Court in one consolidated action. At the time the actions were filed, plaintiff was represented by counsel.

The first case, Civil Action No. 15-753, was originally filed in federal court on February 17, 2015. In that action Tinneny asserts one claim under the Fair Housing Act for retaliatory eviction against SCEE. On July 14, 2015, Tinneny brought a second action in the Court of Common Pleas of Philadelphia County, in which he asserted various federal and state claims against all defendants.

4

Defendants removed that case to federal court on August 5, 2015, and the case was assigned Civil Action No. 15-4305. The SCEE defendants and Echelon filed separate Motions to Dismiss on August 12 and 13, 2015, respectively.

On December 9, 2015, plaintiff's counsel filed a Motion to Withdraw. The Court held a hearing on January 22, 2016, and granted the Motion. The Court also consolidated the two actions. Tinneny proceeded to litigate the case *pro se*. After several delays at Tinneny's request, the Court, also at Tinneny's request, referred the case to the Attorney Panel for *Pro Se* Plaintiffs in Employment Cases for appointment of counsel by Order dated May 6, 2016. (Doc. No. 54). However, no counsel agreed to represent Tinneny.

By Order dated December 6, 2016, at Tinneny's request, the Court dismissed plaintiff's Fair Housing Claim against SCEE with prejudice. (Doc. No. 65). SCEE defendants' Motion to Dismiss or, in the alternative, Motion for a More Definite Statement, and Echelon defendants' Motion to Dismiss are currently pending before the Court. Tinneny responded to the two Motions on January 9, 2017.

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and

5

must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses the remaining "'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether the complaint states a plausible claim for relief. *Id.* In an employment discrimination action, a plaintiff need not fully establish each element of the *prima facie* case. However, the complaint must plead facts that "raise a reasonable expectation that discovery will reveal proof of [the] claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Plaintiff is proceeding *pro se* in this case. "The Court is mindful of the instruction that it should broadly construe normal pleading requirements when handling pro se submissions." *Scott v. Com. Dep't of Pub. Welfare*, No. 02-cv-3799, 2003 WL 22133799, at *2 (E.D. Pa. Aug. 28, 2003) (DuBois, J.).

### III. SCEE DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

SCEE defendants move to dismiss all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, the Court concludes that each claim, except for plaintiff's retaliation claim under Title VII against SCEE, must be dismissed.

#### A. HOSTILE WORK ENVIRONMENT – TITLE VII

Plaintiff avers that he was subjected to a hostile work environment on the basis of his gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). To state a claim for hostile work environment, plaintiff must aver that (1) the employee suffered intentional discrimination because of membership in a protected class, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of

---

[1] SCEE defendants move in the alternative for a more definite statement under Federal Rule of Civil Procedure 12(e). The Court treats that alternative request as a Motion for a More Definite Statement and denies the Motion as the Complaint contains sufficient information to put defendants on notice of the conduct underlying the claims against them.

6

responsibility on the part of the employer. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "[I]solated incidents (unless extremely serious)" are not actionable under Title VII. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001).

In this case, plaintiff's Complaint alleges that Tom Landsmann, a member of the SCEE Board, called plaintiff a "pussy" at least three times on January 24, 2014. Compl. II ¶¶ 51, 57, 59. Plaintiff does not allege any other instances of sexually demeaning harassment by Landsmann or any other SCEE employee. Accepting these allegations as true, plaintiff has pled a mere "isolated incident," *Breeden*, 532 U.S. at 271, that is neither sufficiently severe nor pervasive to establish a hostile work environment. The Court concludes that plaintiff's allegations fail to state a hostile work environment claim under Title VII. Because amendment would be futile, the Court dismisses this claim with prejudice.

### B. UNEQUAL PAY

Plaintiff avers that he was denied equal benefits for performing equal work compared to certain female SCEE employees. The Court construes plaintiff's argument as asserting a claim under the Equal Pay Act ("EPA"), 29 U.S.C. § 206.[2] To state a prima facie claim under the EPA, a plaintiff must allege facts showing "employees . . . were paid differently for performing equal work—work of substantially equal skill, effort, and responsibility." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).

Plaintiff's Complaint alleges that he was treated differently than four female comparators: Joanne Donahue, Donna Struck, Melissa Nase, and Claire Morgan. Donahue is not a similarly situated comparator as plaintiff does not plead that Donahue performed comparable groundskeeper work, and the Complaint reveals that she held a position that required a greater level of

---

[2] Construed as a claim under Title VII, the claim fails for the same reason. *See, e.g.*, *Hutchins v. United Parcel Serv., Inc.*, 197 F. App'x 152, 160 (3d Cir. 2006); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087 (3d Cir. 1996).

responsibility.  Compl. II ¶ 26. Similarly, Struck is not a similarly situated comparator because the Complaint states that Struck was "the SCEE Business Manager and point person on HR-related matters . . . ," not a groundskeeper. Compl. II ¶ 27.  While plaintiff does allege that Melissa Nase performed the same type of manual labor as he did, Compl. II ¶ 37, Nase is not a similarly situated comparator because she became plaintiff's "de facto supervisor." Compl. II ¶ 90; *see Funayama v. Nichia Am. Corp.*, No. 08-cv-5599, 2011 WL 1399844, at *23 (E.D. Pa. Apr. 13, 2011) (holding that plaintiff's Equal Pay Act claim fails because the comparator "was identified as [plaintiff's] supervisor on multiple occasions"). Finally, plaintiff pleads limited facts as to Claire Morgan's actual job responsibilities, but it does not appear from the Complaint that her employment duties were comparable to plaintiff's duties. Compl. II ¶ 36.

Plaintiff has not pled the existence of any similarly situated comparator.  Thus, the Court grants SCEE's motion to dismiss plaintiff's claim for violation of the Equal Pay Act.  The claim is dismissed with prejudice because the Court concludes amendment would be futile.

## C. Retaliation – Title VII

Next, plaintiff claims that he was fired in retaliation for filing a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), in violation of Title VII, 42 U.S.C. § 2000e-3. To state a claim for retaliation under Title VII, plaintiff must aver that "(1) the employee engaged in a protected employee activity, (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity, and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001).

On April 24, 2014, plaintiff submitted an EEOC Intake Questionnaire, on which he checked Box 2. (Doc. No. 59, filed August 24, 2016).  By checking Box 2, plaintiff filed a charge of sex discrimination. *See Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 113 (3d Cir. 2014) ("[A]n

employee who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination."). In the Questionnaire, plaintiff stated that he was subjected to an "hour long meeting of sexually demeaning verbal harassment by a board member, and disrespectful harassing behavior" and that he was treated less favorably than female employees. The Court concludes that, by submission of the Questionnaire, *pro se* plaintiff filed a charge of sex discrimination, which constitutes protected activity.

SCEE also argues that the Complaint fails to adequately plead causation even if plaintiff engaged in protected activity. The Court rejects that argument. Plaintiff has pled a "pattern of antagonism" following the filing of his discrimination charge. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997). Specifically, plaintiff was allegedly "isolated" from social events and was discussed in "secret meetings," and SCEE banned communication between plaintiff and other staff. Compl. II ¶¶ 76–89. These events culminated in plaintiff's demotion, Compl. II ¶¶ 90–91, and later, the decision to terminate plaintiff's employment. Compl. II ¶¶ 99, 104. At this early stage, plaintiff's allegations are sufficient to plead a retaliation claim against SCEE. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792-93 (3d Cir. 2016). SCEE's Motion is thus denied as to this claim.

### D. First Amendment Violation

Plaintiff claims that SCEE violated his rights under the First Amendment to the United States Constitution. Specifically, he avers that SCEE prevented him from protesting on his own property. "[T]he First Amendment governs only state action, not the actions of private entities." *Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 200 (3d Cir. 2009). To evaluate whether SCEE, a private nonprofit entity, is a state actor, "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337 at

339 (3d Cir. 2005). Private property does not "lose its private character merely because the public is invited to use it for designated purposes." *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 569 (1972).

Plaintiff's Complaint does not plead any facts that establish state action. Accepting the Complaint's allegations as true, there is no indication that the state participated in or encouraged the claimed constitutional violation. Nor does the Complaint allege that SCEE or its employees are in any way controlled by the state.[3] The Court concludes that plaintiff's First Amendment claim fails as a matter of law and, because amendment would be futile, the Court dismisses plaintiff's First Amendment claim with prejudice.

### E. DEFAMATION

Plaintiff advances three defamation claims against SCEE defendants. Under Pennsylvania defamation law, plaintiff must plead facts establishing: (1) the defamatory character of the communication, (2) its publication by defendant, (3) its application to plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged condition. 42 Pa.C.S. § 8343(a). The Court considers each communication in turn.

First, plaintiff claims he was defamed by Goin's statement to police that plaintiff "may be schizophrenic" and mentally ill. Compl. II ¶¶ 117-18. Under Pennsylvania law, "statements made to law enforcement officials for the purpose of persuading those officials to initiate criminal proceedings" are privileged and cannot predicate a defamation claim. *Schanne v. Addis*, 121 A.3d 942, 947-48 (Pa. 2015). SCEE called the police to report plaintiff's picketing activity. Goin's

---

[3] In his Response, plaintiff states that "SCEE is a state actor by contract . . . in relation to the administration of the community gardens, and the work related to the community gardens that takes place on SCEE property." Resp. to Motions to Dismiss, 3. The Court concludes it would be futile to grant plaintiff leave to amend his Complaint to include these facts as SCEE is not a state actor based on those alleged public functions. *See Kalian at Poconos, LLC v. Saw Creek Estates Cmty. Ass'n, Inc.*, 275 F. Supp. 2d 578, 589-90 (M.D. Pa. 2003).

statement that plaintiff is "mentally ill" to police officers was "material to the relief sought," as plaintiff's mental state was relevant to SCEE's concern about his potential dangerousness. *See Schanne*, 121 A.3d at 947. Accordingly, plaintiff's allegation regarding Goin's statement to police fails to state a claim for defamation.

Second, plaintiff claims that he was defamed by an email sent by Weilbacher to SCEE "parents." The email, dated June 26, 2014, stated that plaintiff was being "closely monitored" and that "[a]s an additional precaution, a boundary has been established around the house he has inhabited; no visitors, children, or groups are able to access parts of our property near that boundary." Compl. II ¶ 123. Plaintiff avers that the email was part of a "whisper campaign" to portray him as a "dangerous schizophrenic." Compl. II ¶¶ 121, 122.

The Court concludes that the Weilbacher email is not capable of defamatory meaning and was conditionally privileged. The email, as pled, does not contain any falsehoods about plaintiff. Weilbacher's statements cannot be "fairly and reasonably construed" to imply that plaintiff is a dangerous schizophrenic. *See Livingston* v. *Murray,* 417 Pa. Super. 202, 214 (Pa. Super. Ct. 1992) (stating that to qualify as "defamation by innuendo," the implied meaning must be warranted, justified, and supported by the publication). Furthermore, SCEE parents were "entitled to know" about the monitoring, perimeter, and any other steps SCEE was taking to address the dispute with plaintiff as plaintiff was actively picketing on the property. *See Rockwell v. Allegheny Health, Educ. & Research Found.*, 19 F. Supp. 2d 401, 408 (E.D. Pa. 1998) ("A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know."). Plaintiff can therefore only succeed if Weilbacher abused the conditional privilege. The Court concludes that, accepting plaintiff's allegations as true, Weilbacher did not abuse the privilege as his communication was not "motivated solely by spite or ill-will against the plaintiff." *See Howard v. Deklinski*, No. 01-4171, 2002 WL 31501850 (3d Cir.

Nov. 12, 2002). Accordingly, plaintiff fails to state a claim for defamation as to the Weilbacher email.

Finally, plaintiff claims that he was defamed by a letter written by Anna Mueser, also dated June 26, 2014. According to the Complaint, the letter repeated the statements from Weilbacher's email, and additionally claimed that "[w]e are in the process of evicting the former employee," who "refused to leave." Compl. II ¶¶ 124–125. Like the Weilbacher email, Mueser's letter is not capable of defamatory meaning and is conditionally privileged. Mueser's additional statement concerning the eviction process does not change the analysis because the statement addresses SCEE's actions and intentions without defaming plaintiff. That plaintiff "refused to leave" is a true fact, as pled in the Complaint. Plaintiff fails to state a claim for defamation as to the Mueser letter. Because amendment would be futile as to all three defamation claims, the Court dismisses them with prejudice.

### F. WRONGFUL DISCHARGE

Next Tinneny claims that he was wrongfully discharged (1) in retaliation for filing a complaint of discrimination with the EEOC, and (2) for filing a report of illegal activity on the grounds of a preschool at SCEE. Neither allegation states a claim for wrongful discharge. Under Pennsylvania law, employment is "at-will"; the employer is generally free to discharge an employee "with or without cause, at pleasure." *Donaldson* v. *Informatica Corp.,* 792 F. Supp. 2d 850, 855 (W.D. Pa. 2011). The tort of wrongful discharge applies "only in the absence of a statutory remedy and only when important and well recognized facets of public policy [are] at stake." *Rettinger* v. *American Can Co.*, 574 F. Supp. 306, 311 (M.D. Pa. 1983).

Plaintiff cannot state a wrongful-discharge claim based on retaliation for filing an EEOC charge because he has a statutory remedy available to him under Title VII. *See Rettinger*, 574 F. Supp. at 311. SCEE's Motion to Dismiss *pro se* plaintiff's retaliation claim under Title VII is

12

denied, and that claim may proceed. The wrongful-discharge claim based on retaliation thus fails as a matter of law. *Cf. McAlee v. Independence Blue Cross*, 798 F. Supp. 2d 601, 604-06 (E.D. Pa. 2011).

Plaintiff's allegation that he was wrongfully discharged for reporting a drug crime also fails to state a wrongful-discharge claim. Employees can be fired at will for reporting a crime, provided they do not have a legal duty to do so. *See, e.g.*, *Fraser*, 352 F.3d at 112 (noting that Pennsylvania courts "have repeatedly rejected claims that a private employer . . . violated public policy by firing an employee for whistleblowing").

Plaintiff's wrongful discharge claim is dismissed with prejudice. The Court concludes amendment would be futile.

## IV. ECHELON DEFENDANTS' MOTION TO DISMISS

Echelon defendants move to dismiss all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's Complaint asserts assault, battery, and invasion of privacy claims against Echelon and its employees John Does #1–3. For the reasons that follow, the Court denies Echelon defendants' Motion to Dismiss as to plaintiff's assault and battery claims but grants the Motion as to plaintiff's invasion of privacy claim against John Doe #1.

### A. ASSAULT

Plaintiff asserts claims for assault against three individual John Doe defendants, and asserts a claim against their employer, Echelon, under the doctrine of vicarious liability. "Assault is an intentional attempt by force to do an injury to the person of another . . . ." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). The Court considers each assault claim in turn.

Plaintiff's Complaint alleges three separate incidences of assault that occurred while plaintiff picketed at the end of the Weil House driveway. First, he alleges that on July 2, 2015, John Doe #1 "slammed on the accelerator" of his vehicle, "threatening to run over the Plaintiff." Compl.

II ¶ 128. Second, on July 7, 2015, John Doe #2 allegedly pointed a loaded firearm at plaintiff. Compl. II ¶¶ 134–137. And third, on that same date, John Doe #3 "drove in front of Plaintiff, zig-zagging, backing up in front of Plaintiff, attempting to run over Plaintiff with his vehicle and missing his foot by less than an inch." Compl. II ¶ 141.

According to Echelon, its employees were entitled to use reasonable force against plaintiff to defend SCEE property against a trespasser. The Court rejects this argument. Plaintiff was not a conventional trespasser; he retained possession of property as SCEE had not yet obtained a lawful eviction judgment against him. Neither SCEE nor Echelon have provided authority for the proposition that a landlord's employee can threaten or use force against a tenant in order to control the tenant's activities on disputed property. *See Lenair v. Campbell*, 31 Pa. D. & C.3d 237, 242 (Pa. Com. Pl. 1984) (Legal process provides the "complete and exclusive remedy for a landlord seeking to vindicate his rights.").

Echelon additionally argues that it was merely enforcing an injunction issued by the Pennsylvania Court of Common Pleas, which forbade plaintiff from protesting on SCEE property. However, if plaintiff was violating an injunction, the appropriate remedy is to seek enforcement from the issuing court. The Echelon defendants have provided no support for their use of self-help to enforce a court's equitable remedy.[4] Accepting the facts alleged in the Complaint as true, plaintiff has adequately pled assault claims against the three John Doe defendants.

Plaintiff also seeks to hold Echelon vicariously liable for the alleged assaults by its employees. To hold an employer vicariously liable, the employee's acts must be "committed during the course of and within the scope of the employment." *Sutherland v. Monongahela Valley Hosp.*, 856 A.2d 55, 62 (Pa. Super. Ct. 2004). Conduct is within the scope of employment if: (1) it is of a

---

[4] Even assuming that the Echelon employees were entitled to use some amount of force against plaintiff, the amount of force alleged in the Complaint—deadly force—was not reasonable under the circumstances. *See Simmons v. Galin*, No. 97-cv-6151, 2002 WL 109611, at *4 (E.D. Pa. Jan. 24, 2002) (Pennsylvania law "authorizes only non-lethal force for the protection of property.").

kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Gerhart v. Com. of Pa.*, No. 09-cv-1145, 2009 WL 2581715, at *8 (E.D. Pa. Aug. 13, 2009). "

In this case, Echelon avers that the actions of the John Doe defendants were outside scope of their duties because they were "not engaged to commit criminal acts against the Plaintiff." Echelon Br. at 8. However, the "liability of [an] employer may extend even to intentional or criminal acts committed by the servant." *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979). Upon consideration of all four factors, the Court is unable to determine at this early stage that the conduct of the John Doe employees fell outside the scope of their employment. The Court therefore denies the Echelon defendants' Motion to Dismiss as to plaintiff's claim for vicarious liability against Echelon for the assault claims.

### B. BATTERY

Plaintiff asserts a battery claim against John Doe #3 and also seeks to hold Echelon vicariously liable for that claim. To state a claim for battery under Pennsylvania law, plaintiff must aver that there was "a harmful or offensive contact with a person, resulting from an act intended to cause plaintiff or a third person to suffer such contact, or apprehension that such a contact is imminent." *Bell v. Twp. of Concord*, 759 F. Supp. 2d 621, 630 (E.D. Pa. 2011).

In this case, plaintiff pled that the vehicle driven by John Doe #3 "grazed Plaintiff's leg, causing him to fall back." Compl. II ¶ 142. The Court concludes that plaintiff adequately pled a battery claim against John Doe #3 and, for the reasons set forth above in connection with plaintiff's assault claims, plaintiff may also assert the battery claim against Echelon under the doctrine of vicarious liability.

### C. INVASION OF PRIVACY

Finally, plaintiff avers that John Doe #1 tortiously invaded his privacy by "intruding upon his seclusion." Under Pennsylvania law, "intrusion upon seclusion" applies to "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Marks v. Bell Telephone Co.,* 331 A.2d 424, 430 (Pa. 1975). The invasion may occur by "(1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992).

Plaintiff does not plead that John Doe #1 intruded upon any area that is, in fact, secluded. The Complaint only alleges that John Doe #1 "stalked Plaintiff on the grounds of his own residence, hiding behind trees and bushes, taking pictures of Plaintiff." Compl. II ¶ 129. John Doe #1 also "stalked Plaintiff, following him down his own driveway for a tenth of a mile." Compl. II ¶ 130. These allegations do not state a claim for invasion of privacy because "his appearance is public and open to the public eye." Restatement (Second) of Torts § 652B, cmt. c. Rather, defendants' conducted constituted a reasonable investigation into plaintiff's activities. *Cf. Forster v. Manchester*, 189 A.2d 147, 150 (Pa. 1963). The Court concludes that plaintiff has failed to plead an invasion of privacy claim and dismisses the claim with prejudice as amendment would be futile.

### V.     FUTILITY OF AMENDMENT

Although Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave [to amend] when justice so requires," the Court may deny leave for good reason, including futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted," the same

legal standard that applies under Federal Rule of Civil Procedure 12(b)(6) for assessing a motion to dismiss. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). In the present case, the Court concludes that amendment would be futile as to plaintiff's hostile work environment, violation of the Equal Pay Act, violation of the First Amendment, defamation, wrongful discharge, and invasion of privacy claims. Thus, the Court dismisses those claims with prejudice.

## VI. PETITION FOR PRELIMINARY INJUNCTION

Prior to the removal of Civil Action No. 15-4305 to federal court, plaintiff filed a petition for a preliminary injunction against SCEE that would, *inter alia*, forbid SCEE from interfering with plaintiff's protest activities and enjoin SCEE from defaming plaintiff.

"The grant of injunctive relief is an extraordinary remedy . . . which should be granted only in limited circumstances." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994). The party moving for a preliminary injunction must show that (1) the movant has a reasonable probability of success on the merits, (2) irreparable harm would result if the relief sought is not granted, (3) the relief would not result in greater harm to the non-moving party, and (4) the relief is in the public interest. *See Swartzwelder v. McNeilly*, 297 F.3d 228, 234 (3d Cir. 2002).

Plaintiff no longer resides at Weil House. Because he no longer resides there, the part of plaintiff's petition for preliminary injunction that seeks to enjoin SCEE from interfering with his protest activities on that property is denied as moot. In all other respects, plaintiff's petition is denied because he has not shown a "likelihood of success on the merits[.]" *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

## VII. CONCLUSION

For the foregoing reasons, SCEE defendants' Motions to Dismiss is granted in part and denied in part. Plaintiff's hostile work environment under Title VII, violation of the Equal Pay Act, violation of the First Amendment, defamation, and wrongful discharge claims against SCEE defendants are dismissed with prejudice. The Court grants Echelon defendants' Motion to Dismiss plaintiff's invasion of privacy claim against Echelon defendant John Doe #1 with prejudice. Echelon defendants' Motion to Dismiss is denied in all other respects.  Plaintiff's Petition for Preliminary Injunction is also denied.

The remaining claims in this case are (1) a retaliation claim under Title VII against SCEE, (2) assault claims against Echelon employees John Does #1-3 and Echelon, and (3) a battery claim against John Doe #3 and Echelon. An appropriate order follows.